```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                      Richmond Division
```

ROBERT C. STEINBURG,

    Plaintiff,

v.                                     Civil Action No. 3:06cv248

CHESTERFIELD COUNTY PLANNING
COMMISSION; DANIEL GECKER, in
his Official Capacity; and
SHERMAN W. LITTON, in his
Official Capacity,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the Revised Motion for Summary Judgment filed by Defendants Daniel Gecker, Sherman Litton, and the Chesterfield County Planning Commission (Docket No. 28), and the Motion for Partial Summary Judgment filed by the Plaintiff, Robert Steinburg (Docket No. 9). For the reasons set forth below, the Plaintiff's motion is denied, and the Defendants' motion is granted in part.

**I.  Procedural Posture And Statement Of Facts**

Pursuant to 42 U.S.C. § 1983, Robert Steinburg filed this action against the Chesterfield County Planning Commission ("Commission"), Commission Chairman Sherman Litton in his official capacity, and Commission member Daniel Gecker in his official capacity. Steinburg alleges that the Defendants deprived him of

the right to free speech guaranteed by the First Amendment to the United States Constitution during a Commission meeting held on October 18, 2005. Steinburg and the Defendants have each moved for summary judgment.

The incident that led to this action was recorded on videotape, so the actual conduct that forms the basis for Steinberg's case is not subject to dispute. On October 18, 2005, Steinburg attended a regular meeting of the Commission, during which members of the public were afforded the opportunity to express their opinions on zoning issues on the Commission's agenda. One item on the agenda was a proposed zoning change related to the Tarrington Subdivision. When that agenda item was called, an attorney representing Tarrington's developers, William Shewmake, asked to defer the rezoning hearing for 30 days.[1]

After Shewmake made his request, Litton, Chairman of the Commission, opened the floor for public comment on the deferral request. Litton made it clear that the deferral was the only topic open for discussion at that point in the meeting. Three citizens in the audience took advantage of the opportunity to speak:

---

[1] Under the Commission's Suggested Practices and Procedures, a request for deferral is to be made in writing at least three days before the meeting. (See Aff. of Linda Lewis, Ex. B at 2.) For reasons neither explained nor readily apparent, this procedure was not followed. The failure to follow the prescribed protocol is mentioned in Steinburg's papers but the failure is not a component of his claim. (See Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. at 5.)

Steinburg, who spoke third, and two other community members who spoke before him. Just before the first speaker began her presentation, Litton reiterated that discussion was to be "just on the deferral," and not on other topics.

Although the first speaker referred to the deferral throughout her presentation, most of her comments addressed safety issues related to the proposed rezoning request. Specifically, she feared that development undertaken pursuant to the proposed rezoning would occur atop a dangerous network of abandoned mine shafts. Notwithstanding that the first speaker did not confine her comments to the deferral request, the Commission allowed her to make the substantive presentation without interruption, and one Commission member even asked her several safety-related, substantive questions upon conclusion of her prepared remarks.

The second speaker, like the first, mentioned the deferral in passing, but also made a lengthy substantive presentation about safety issues related to the proposed rezoning. Midway through the second speaker's presentation, Gecker, a member of the Commission, interrupted the speaker to ask whether or not the speaker was in favor of the deferral. Litton, the Chairman, also interjected, reminding the speaker that he would have an opportunity to present substantive remarks at a later date (apparently assuming that the hearing would in fact be deferred). After Litton's reminder, the second speaker promised to "shut up" after just a few more

substantive comments. No Commission member objected, and the second speaker continued his substantive remarks for a short while before finally finishing.

After the second speaker finished, Gecker recalled to the podium Shewmake, the Tarrington developers' attorney, and asked him to address the safety concerns expressed by the previous two speakers. Gecker acknowledged that he was going to question Shewmake about matters unrelated to the deferral, but expressed the view that he was entitled to do so because Litton had allowed the previous two speakers to stray off topic and to address matters of substance respecting safety. Gecker then proceeded to ask Shewmake questions calculated to provide responses to the safety concerns raised by the first two speakers.

When Gecker finished questioning Shewmake, Steinburg came to the podium. What follows is a partial transcript of the exchange between Steinburg and members of the Commission. The transcript begins after Steinburg made several introductory comments unrelated to the deferral:

> MR: STEINBURG: Now I understand that you're not making a decision as it relates to this particular issue this evening, but I think it is very, very important to apprise you, if you are not already aware, that this is an issue that people - it's a very volatile issue. I have lived in this corridor for thirty years, and I can tell you I haven't seen people this hot about anything like this, ever. This is a very serious issue.

>
> One of the things that troubles me when some of these things are being presented this evening is a lot of bandying about, back and forth, by some of you, who don't seem to be paying attention, or else are talking about something that perhaps might not even be related, and I can tell you that perception is reality in the eyes of many. What you are talking about, I have no idea - <u>Mr. Gecker, you in particular, leaning over and saying this, that, and the other thing - but I can tell you from a perception standpoint from someone who is concerned, like myself and others in this room, it's not very flattering, believe me</u>.

MR. GECKER: Mr. Steinburg, <u>abusing this podium</u> is not very flattering.

MR. STEINBURG: That is <u>not abusing</u> the podium, Sir. I am telling you what I observed. I am a citizen. I am representing 600 households here at their bequest [sic] tonight, and <u>you will listen</u> to what I am saying, Sir.

MR. GECKER: <u>No, Sir, you will not talk to me that way</u>. I am not going to listen to what you've got to say on a deferral motion when you come and speak to something other than the deferral. The Old Gun Road Civic Association -

MR. STEINBURG: That is with regard to deferral, Sir -

MR. GECKER: - supported the Tarrington -

MR. STEINBURG: <u>Mr. Gecker</u>, would you please give me the right to speak? <u>Who do you think you are</u>?

MR. LITTON: <u>I'm going to cut you off. I'm Chairman, I can cut you</u> -

MR. STEINBURG: Mr. Litton, yes, you can. You can do that.

5

MR. LITTON:      And I am.  This has gone way past, I've given you the courtesy.  This is nothing but a deferral.  This has nothing to do with the case.  So just please sit down.

MR. STEINBURG:   I'm not sitting down.  I'm not done talking yet.  Ask Kirk Turner, he knows me.  I'm not a wild citizen.

MR. GECKER:      Is there a - Mr. Turner, is that right?

MR. STEINBURG:   Let me speak.

MR. LITTON:      I, you know, I've heard enough on this case tonight, I'm going to cut it off.

MR. STEINBURG:   Can you tell me why you are cutting it off?

MR. LITTON:      Because it is strictly a deferral and we're not arguing the case tonight.  The case will be discussed at some time, at a later time.  If you are telling me that you are in favor of the deferral, that is all I need to know.  If you don't want the deferral, then you can argue -

MR. STEINBURG:   You don't want any background information on anything.  It sounds to me like you people have already make up your mind as to what you're going to do.

MR. LITTON:      I don't need the information tonight because I'm going to hear the case again next month.

MR. STEINBURG:   I understand that, Sir.  All I'm asking for is respect from you.  I'll give you respect, you give me respect.  That's all I want.

MR. LITTON:      I'm asking you just to sit down please.

MR. STEINBURG:   I know you are.  I understand what you're doing.  And when I'm through speaking I'll sit down.

    MR. LITTON:   <u>No, I think you're going to sit down now</u>.

    MR. STEINBURG: <u>I'm not</u>.

(Video Recording of Chesterfield County Planning Commission Meeting, October 18, 2005.)  After this exchange, Litton asked Chesterfield County Police Officer James Profita to ask Steinburg to sit down.[2]  Profita told Steinburg to sit down because he was engaging in disorderly conduct.  Steinburg refused to sit down and was escorted from the podium by Profita and another officer, each of whom held Steinburg by an arm.  After being removed from the podium, Steinburg was arrested for disorderly conduct, but the charges were later *nolle prosequied* at the request of Gecker and Litton.  (Defs.' Mot. for Summ. J. at 6 n.7; Litton Dep. 102:11-103:7, Oct. 12, 2006.)

At the time Steinburg was forced from the podium, the Commission's Suggested Practices contained a rule prohibiting anyone from making "personal attacks" while speaking in Commission meetings.  (Defs.' Mem. Supp. Summ. J. at 14 n.12.)  Although that rule was not directly referenced by anyone on the night that this incident occurred, Gecker mentioned it while describing the incident in an email sent on October 27, 2005.  (Pl.'s Br. in Resp. to Defs.' Revised Mot. for Summ. J. Ex. A.)  Specifically, Gecker

---

[2]Profita entered the hearing room after Commission Member Kirk Turner pressed a panic button sometime during the exchange between Steinburg and Litton.  (<u>See</u> Turner Dep. 91:23-92:10, Oct. 5, 2006; Profita Dep. 7:24-8:4, Oct. 5, 2006.)  Turner thought the meeting was "out of control" at that point.  (Turner Dep. 92:5.)

7

told a community member that, in addition to speaking off topic, Steinburg "launched into a personal attack (also prohibited by our rules)." (Id.)  The Commission rescinded the policy prohibiting personal attacks on April 18, 2006. (Defs.' Mem. Supp. Summ. J. at 14 n.12.)

Four months after this incident, Steinburg filed this action under § 1983, claiming a violation of his First Amendment right to free speech.  Steinburg seeks compensatory and punitive damages from each of the Defendants, and injunctive relief to prevent the Commission from enforcing its policy prohibiting personal attacks. The Defendants filed a Motion for Summary Judgment on May 31, 2006 (Doc. No. 6), and Steinburg filed a Motion for Partial Summary Judgment on June 14, 2006 (Doc. No. 9).  A hearing on those motions was held on September 6, 2006.  During a conference call on September 21, 2006, Steinburg's counsel clarified that he was suing Litton and Gecker in their official capacities and, one week later, the Defendants filed a Revised Motion for Summary Judgment (Doc. No. 28), which addresses more directly the official capacity claims.[3]  The Defendants argue that Steinburg suffered no constitutional injury, that Steinburg's request for injunctive relief is moot, and that the official capacity claims against Litton and Gecker must be dismissed.

---

[3] Steinburg also filed a Motion to Amend Complaint and to Add New Party Defendant (Docket No. 38) on November 1, 2006.  That motion is addressed in a separate Memorandum Opinion.

## II. Steinburg's Prayer For Injunctive Relief

Steinburg has asked for injunctive relief to prevent the Commission from implementing its policy prohibiting personal attacks during public meetings. Because that policy has been rescinded by the Commission, the issue is moot, rendering injunctive relief neither necessary nor available.

## III. Official Capacity Claims Against Litton and Gecker

Litton and Gecker originally sought summary judgment based on qualified immunity but, because Steinburg has clarified that his suit is against Litton and Gecker in their official capacities only, the defense of qualified immunity is unavailable to Litton and Gecker.[4] Kentucky v. Graham, 473 U.S. 159, 166-67 (1985); Ridpath v. Bd. of Governors Marshall Univ., 444 F.3d 292, 306 (4th Cir. 2006). Litton and Gecker now urge that the official capacity

---

[4] While the style of Steinburg's complaint indicates only an official capacity suit against Litton and Gecker, the body of the complaint offers some evidence that Steinburg intended to sue Litton and Gecker in their individual capacities, and the parties themselves seemed to treat this as an individual capacity suit. However, during a conference call on September 21, 2006, Steinburg's counsel answered in the affirmative when the Court asked him directly if this was an official capacity suit rather than an individual capacity suit. (See Pl.'s Mem. in Supp. of Mot. to Amend Compl. at 2.) Because, at the time, Steinburg's counsel fully understood the legal implications of his response, the Court has treated this as an official capacity suit, in keeping with the reasoning of Atchinson v. District of Columbia, 73 F.3d 418, 424-28 (D.C. Cir. 1996). After reflecting on the matter further, Steinburg moved to amend the complaint in order to sue Litton and Gecker in their individual capacities, as well as to add another defendant. As noted above, that motion is addressed separately.

claims against them be dismissed because those claims are indistinguishable from the claim against the Commission. (Defs.' Mem. in Supp. of Revised Mot. for Summ. J. at 3.)

Individual-capacity suits seek to impose personal liability on government officials, but official-capacity suits, "in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. at 159 (internal citations omitted). If the governmental entity "receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. at 166. Therefore, if a plaintiff files suit against both a governmental entity and against that entity's officials in their official capacities, the suits against the government officials are duplicative, and may be dismissed as such. See Hicks v. Halifax County Bd. of Educ., 93 F. Supp. 2d 649, 667 (E.D.N.C. 1999) (dismissing claims against school board members in their official capacities as being identical to the claims against the school board itself). Accordingly, the claims brought by Steinburg against Litton and Gecker in their official capacities, being conceptually identical to the claim against the Commission itself, are dismissed without prejudice.

**IV. Steinburg's Claim Against The Commission**

The only remaining claim is against the Commission itself. Steinburg brings this action under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law.

Section 1983 is not itself a source of substantive rights; rather, it provides a procedural vehicle for vindicating rights conferred by the United States Constitution or federal statute. See Albright v. Oliver, 510 U.S. 266, 271 (1994). A municipality or other local governmental body, which, of course, is a "person" under § 1983, may be held liable under that Section only if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). Therefore, to hold the Commission liable under § 1983, Steinburg must identify a constitutional injury, a policy attributable to the Commission, and a causal relationship between that policy and the claimed injury. Believing those issues to be ripe for resolution, Steinburg and the Commission have each moved for summary judgment as to the Commission's liability.

### A. Summary Judgment Analysis

The standards of review applicable to summary judgement motions are well-established. Summary judgment is proper only when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when proof of its existence or nonexistence would affect the outcome of the case, and an issue is genuine if a reasonable jury might return a verdict in favor of the nonmoving party on the basis of such issue. Id.

In making a summary judgment determination, the Court may rely upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed. R. Civ. P. 56(c). The Court must view the facts and any reasonable inferences drawn from these facts in the light most favorable to the nonmoving parties. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Whether a factual inference is reasonable "cannot be decided in a vacuum; it must be considered 'in light of the competing inferences' to the contrary." Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995) (citing Matsushita, 475 U.S. at 588).

The nonmoving party is entitled to have his version of all that is disputed accepted, all conflicts resolved in his favor, and to have the benefit of all favorable legal theories invoked by the

12

evidence. M & M Medical Supplies and Serv. Inc. v. Pleasant Valley Hospital, Inc., 981 F.2d 160, 163 (4th Cir. 1992). The party who bears the burden of proof on an issue at trial, however, cannot survive summary judgment without sufficient evidence to sustain his or her burden of proof on that point. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). These precepts and standards govern the resolution of the motions for summary judgment in this action.

**B. The Commission's Motion For Summary Judgment**

The Commission's Motion for Summary Judgment will be considered first. As noted above, to hold the Commission liable under § 1983, Steinburg must identify a constitutional injury, a policy attributable to the Commission, and a causal relationship between that policy and the injury. With the facts and all reasonable inferences drawn in his favor, Steinburg must muster enough evidence to survive summary judgment on each component of his claim.

**1. Injury**

Steinburg seeks to hold the Commission accountable for the actions of Litton and Gecker, and argues that Litton and Gecker, in causing injury to Steinburg, implemented the Commission's policy prohibiting personal attacks. (See Pl.'s Br. in Resp. to Defs.' Revised Mot. for Summ. J. at 5-11.) For purposes of analyzing the Commission's motion for summary judgment, the Court will assume, *arguendo*, that Steinburg could produce enough evidence to survive

summary judgment with respect to his alleged constitutional injury. However, in a separate Memorandum Opinion respecting Steinburg's Motion to Amend Complaint and to Add New Party Defendant (Docket No. 38), the Court has concluded that Steinburg could not establish facts sufficient to support a jury finding of constitutional injury at the hands of Litton and Gecker.

### 2. Policy Attributable To The Commission

To hold the Commission liable for the actions of Gecker and Litton, Steinburg also must demonstrate that, in terminating Steinburg's speech, Gecker and Litton were executing a policy attributable to the Commission. Steinburg contends that Gecker and Litton were implementing the Commission's then-existing policy prohibiting personal attacks when they acted to remove Steinburg from the podium.[5] Because the Commission does not dispute that the policy was in place on October 18, 2005, Steinburg easily meets the requirements of summary judgment as to the existence of a Commission policy that might have caused his alleged injury.[6]

---

[5] Steinburg has not alleged that either Litton or Gecker is a "policymaker" whose unilateral actions alone might constitute policies attributable to the Commission. See Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986).

[6] It is worth noting that the Commission's policy prohibiting personal attacks was probably facially unconstitutional. A virtually indistinguishable school board policy was struck down as unconstitutional in Bach v. School Board of the City of Virginia, 139 F. Supp. 2d 738 (E.D. Va. 2001). The Court need not decide that issue here, however.

14

**3. Causation**

Assuming, *arguendo,* that Steinburg could produce evidence of a constitutional injury in addition to the existence of a Commission policy that might have authorized that precise injury, he also must demonstrate "a direct causal link between the [policy] and the deprivation of federal rights." Brown, 520 U.S. at 404 (emphasis added). This causal link is required by the plain language of § 1983, which exposes to liability only a municipality that, through one of its policies, "subjects, or causes to be subjected" a citizen to the deprivation of a constitutional right. In Monell v. Dep't of Soc. Services of the City of New York, the United States Supreme Court stated explicitly that only "when execution of a government's policy ... inflicts the injury [is] the government as an entity is responsible under § 1983." Id. (emphasis added). Therefore, proof of the Commission policy's implementation is required to prove causation here.[7]

Because no one explicitly referenced the Commission policy the night this incident occurred, Steinburg has no direct evidence that the policy actually animated any decision to restrict his speech. Therefore, Steinburg's argument rests on the inference that, because Steinburg's comments to Gecker arguably can be

---

[7] Fundamentally, proof of the Commission policy's execution is necessary because § 1983 cannot be used to challenge municipal policies that have caused no injuries, even if those policies are facially unconstitutional. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

15

characterized as a "personal attack," Steinburg was ultimately silenced because of the Commission's then-existing policy prohibiting such personal attacks. On the facts presented here, Steinburg cannot adduce enough evidence to support that inference.

Steinburg's best evidence from the incident itself is Gecker's initial warning to Steinburg that he was "abusing [the] podium." Given Gecker's October 27, 2005 email, in which, retrospectively, he described Steinburg's comments as a "personal attack" prohibited by Commission rules, Steinburg is entitled to the reasonable inference that Gecker had in mind the now-rescinded Commission policy prohibiting personal attacks when he told Steinburg he was "abusing [the] podium."[8] Nevertheless, that evidence is insufficient to prove that Steinburg was silenced because of the policy. First, it was Litton, not Gecker, who actually restricted Steinburg's speech, and he did so after repeatedly informing all speakers that the topic to be addressed was the request for deferral. Second, in addressing Steinburg, Litton made no statement that reasonably could be inferred to mean that the restriction of Steinburg's speech by Litton was animated by the

---

[8] Gecker claims that "abusing [the] podium" was not directed at Steinburg at all, but was in reference to the two speakers who preceded Steinburg, both of whom failed to discuss the deferral. (Gecker Dep. 123:6-18, Oct. 12, 2006.) Gecker's explanation is not illogical in context (because Gecker had just been accused of not paying attention to the first two speakers), but the Court will construe the facts in the light most favorable to Steinburg, and will adopt the reasonable inference that "abusing [the] podium" was a reference to Steinburg's behavior.

16

Commission's policy. Indeed, Litton consistently maintained that he was silencing Steinburg for speaking off topic.[9] Thus, even though it is permissible to infer that Gecker's conduct was grounded in the Commission's now-rescinded policy, Steinburg would have no viable claim because it was Litton, not Gecker, who actually restricted Steinburg's speech.[10]

Steinburg has adduced no evidence that would allow a jury reasonably to find a direct causal link between the Commission policy and Steinburg's injury. Hence, summary judgment for the Commission is required.

### C. Steinburg's Motion For Partial Summary Judgment

The same record and the same considerations that warrant summary judgment for the Commission compel a denial of Steinburg's motion for partial summary judgment.

---

[9] In addition, nothing in Litton's deposition testimony would indicate that his actions were animated by the Commission's policy. Litton continued to justify his actions by arguing that Steinburg was speaking off topic. (Litton Dep. at 74-81.) Moreover, Litton did not consider Steinburg's remarks to Gecker to be "personal attacks," and it is not clear that Litton knew that the Commission's policies prohibited "personal attacks." (Id. at 14-17, 75:7.)

[10] The tape discloses that Gecker reacted in an inappropriate way when his rude conduct was publicly addressed, but that is not a constitutional violation.

**CONCLUSION**

For the reasons stated above, Steinburg's claims against Litton and Gecker are dismissed without prejudice and Steinburg's Motion for Partial Summary Judgment will be denied. The Commission's Motion for Summary Judgment will be granted.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

                                            /s/
                                      Robert E. Payne
                                      United States District Judge

Richmond, Virginia
Date: February 1, 2007